UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANA M. ZUBER,

       Plaintiff,                              Case No. 1:16-CV-172

v.                                             HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Ana Zuber seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-nine years of age on the date of the ALJ's decision. (PageID.36, 61.) She completed high school, and was previously employed as a resident care aide. (PageID.62, 90.) Plaintiff has applied for benefits on several occasions. She first applied for DIB on November 12, 2004. (PageID.526.) That application resulted in an unfavorable decision on January 27, 2006, by ALJ William E. Decker. (PageID.523–536.) Instead of appealing that decision, it appears Plaintiff filed a new application for DIB as well as an application for SSI in February 2006. (PageID.39.) These applications were also denied. (PageID.39.) Plaintiff thereafter again filed new applications for DIB and SSI on November 1, 2012, the applications at issue here. (PageID.153–167, 537, 555.) In these applications, Plaintiff alleged that she had been disabled since

June 27, 2012, due to degenerative disc disease, irritable bowel syndrome, depression, high blood pressure, and diabetes. (PageID.212.) Plaintiff's applications were denied on March 26, 2013, after which time she sought a hearing before an ALJ. (PageID.91–111.) On March 7, 2014, Plaintiff appeared with her counsel before ALJ Donna Grit, during which time both Plaintiff and a vocational expert (VE) testified. (PageID.57–95.) On June 27, 2014, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (PageID.36–56.) On December 19, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.29–31.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 27, 2012. (PageID.41.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the cervical and lumbar spine; (2) degenerative changes of the right knee; (3) fibromyalgia; (4) obesity; (5) obstructive sleep apnea; (6) depression; and (7) anxiety. (PageID.41–42.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.43–45.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot stoop, crouch, crawl, or perform overhead activities more than occasionally and she cannot understand, remember, or perform more than simple tasks or make more than simple work-related judgments. She can adapt to routine changes in the workplace.

(PageID.45.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.49–50.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a cafeteria attendant (4,200 Michigan jobs and 48,000 national jobs), cleaner (6,200 Michigan jobs and 70,000 national jobs), and machine tender (4,500 Michigan jobs

and 38,000 national jobs). (PageID.92–93.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.51.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point through June 27, 2014, the date of decision. (PageID.51.)

## DISCUSSION

### 1. Plaintiff Has Not Shown How the ALJ May Have Erred In Considering Her Fibromyalgia.

Plaintiff's first statement of error is that the ALJ failed "to properly evaluate [her] fibromyalgia under SSR 12–2p" (PageID.559.) She claims the ALJ "mentions SSR 12–2p" but provides "no analysis." (PageID.604.) Plaintiff fails, however, to identify any error, or even to allege what a proper evaluation should look like. Finding no error, and for the reasons discussed below, the Court rejects this argument.

SSR 12–2p "provides guidance on how [the Commissioner will] develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [the Commissioner will] evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12–2p, 2012 WL 3104869, at *1 (S.S.A. July 25, 2012).[2] The ruling goes on to note the Commissioner will evaluate fibromyalgia under the sequential evaluation as follows:

> A. At step 1, we consider the person's work activity. If a person with [fibromyalgia] is doing substantial gainful activity, we find that he or she is not disabled.

---

[2]SSRs "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006).

5

    B.    At step 2, we consider whether the person has a "severe" [medically determinable impairment](s). If we find that the person has an [medically determinable impairment] that could reasonably be expected to produce the pain or other symptoms the person alleges, we will consider those symptom(s) in deciding whether the person's impairment(s) is severe. If the person's pain or other symptoms cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities, we will find that the person has a severe impairment(s).

    C.    At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). [Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment. At step 3, therefore, we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

    D.    Residual Functional Capacity (RFC) assessment: In our regulations and SSR 96-8p, we explain that we assess a person's RFC when the person's impairment(s) does not meet or equal a listed impairment. We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are "not severe." For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days."

    E.    At steps 4 and 5, we use our RFC assessment to determine whether the person is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5). If the person is able to do any past relevant work, we find that he or she is not disabled. If the person is not able to do any past relevant work or does not have such work experience, we determine whether he or she can do any other work. The usual vocational considerations apply.

*Id.* at \*5–\*6 (footnotes omitted).

A review of the ALJ's decision finds that the ALJ was well aware of her obligation to consider Plaintiff's fibromyalgia under the above ruling, and did in fact discuss fibromyalgia at several points in the decision. As the ruling dictates, the ALJ considered Plaintiff's fibromyalgia under the five step sequential process. At step two, for example, the ALJ found that Plaintiff's fibromyalgia amounted to a severe impairment. (PageID.42.). At step three, the ALJ noted she had considered Plaintiff's fibromyalgia under SSR 12–2p in determining that Plaintiff did not meet or medically equal a listed impairment. (PageID.43.) At step four, the ALJ further discussed the impairment, noting that "[a] review of the medical evidence of record indicates that the claimant's treatment for her pain complaints precedes June 27, 2012 [her alleged onset date] by several years — her complaint of chronic pain in her neck and low back was attributed to fibromyalgia by the medical sources she saw at Michigan Pain Consultants in 2006." (PageID.47.) The ALJ also considered Plaintiff's subjective allegations under the two step process found in SSR 96–7p and as called for in section IV of SSR 12–2p. (PageID.46); *see* SSR 12–2p, 2012 WL 3104869. In all this, the ALJ followed the ruling's principles, which is "all that is required." *Luukkonen v. Comm'r of Soc. Sec.*, No. 15-1561, 2016 WL 3426370, at *5 (6th Cir. June 22, 2016).

For all the above reasons, Plaintiff's claim of error is denied.

### 2. The ALJ Did Not Violate the Treating Physician Rule in Discounting Dr. Anthony Wilson's Opinion.

The record contains several work restrictions from Dr. Anthony Wilson. On several occasions, Dr. Wilson limited Plaintiff to no bending, twisting, or lifting over ten pounds. (PageID.349–350.) The ALJ gave "little weight" to this opinion, noting that the opinion was "not consistent with the clinical findings of his own treatment records or the diagnostic findings of record." (PageID.49.) Plaintiff claims the ALJ erred in relying on a lack of objective support to discount the opinion.

7

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that Dr. Wilson qualifies as a treating source.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with

other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The ALJ found that the limitations provided by Dr. Wilson were inconsistent with his treatment notes. For example, on August 8, 2012, Dr. Wilson found that Plaintiff's range of motion in both lower extremities was within normal limits. She had a negative straight-leg raising sign and only had pain at the end of extending her lumbar spine. (PageID.352.) There were similar results a month later, although Plaintiff had an equivocal straight leg raise test instead at forty degrees bilaterally. (PageID.350.) In October and November she again had a negative straight leg raise test. (PageID.348, 349.) In January 2013, there was pain at the end range of extending her lumbar spine, and a positive straight-leg raise sign at forty degrees. (PageID.392.) The ALJ found these results to be inconsistent with the severity of the limitations provided by the doctor, and Plaintiff does not contest that finding. Instead, she argues that the ALJ erred by using a lack of objective support to discount the opinion because she suffers from fibromyalgia. She relies on two district court decisions, *Swain v. Commissioner of Social Security*, 297 F. Supp. 2d 986 (N.D. Ohio 2003), and *Runyon v. Apfel*, 100 F. Supp. 2d 447 (E.D. Mich. 1999). (PageID.602–603.) In both *Swain* and *Runyon*, however, the treating physician had diagnosed the claimant with fibromyalgia and the ALJ had used a lack of objective support to discount the physician's opinion. *Swain*, 297 F. Supp.2d at 993; *Runyon*, 100 F. Supp. 2d at 459. Here, Dr. Wilson never diagnosed Plaintiff with fibromyalgia. While fibromyalgia is listed once in Plaintiff's history of symptoms, at all times Dr. Wilson's impression of Plaintiff's condition was low back pain and disc bulging at L4-L5 and L5-S1, as well as mild canal stenosis at L4-L5 / right joint pain, and possible facet joint syndrome on the right. (PageID.348–352, 392.) This is not a situation, then, where a doctor provided limitations based on a diagnosis of fibromyalgia and the ALJ used a lack of objective support to discount the

9

opinion. The Court accordingly finds the authority provided by Plaintiff not to be persuasive, and concludes the ALJ did not err by noting a lack of objective support in discounting Dr. Wilson's opinion.

This claim of error is rejected.

### 3. The ALJ Was Not Required to Adopt a Previous RFC.

As noted above, Plaintiff had previously filed for benefits. As part of that process, ALJ Decker determined that Plaintiff had the RFC to perform a range of sedentary work that involved lifting up to only ten pounds occasionally with no repetitive overhead activity, and work of a simple, routine nature. (PageID.532.) Plaintiff claims that ALJ Grit never explained why she adopted a less restrictive RFC in Plaintiff's instant claim for benefits. (PageID.604.) The Court disagrees.

Under the rule of *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and its progeny, the ALJ was required to "adopt and be bound by the finding of [the] claimant's residual functional capacity or other findings required at a step of the sequential evaluation process." *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 514 (6th Cir. 2011); *see also Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 193–194 (6th Cir. 2013); *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 464 (6th Cir. 2004). The ALJ could not "redetermine the findings of a claimant's residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances." *Caudill*, 424 F. App'x at 514. Thus, if an earlier ALJ makes a finding regarding a claimant's RFC, a later ALJ is bound by that RFC determination absent evidence to the contrary. *See, e.g., Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 356 (6th Cir. 2013).

Here, the ALJ considered all the evidence regarding the medical care that Plaintiff had received after the first decision, and found that the new evidence submitted "document[s] the

development of additional impairments and a greater functional ability since the previous decision was issued by Judge Decker in January 2006. Thus, new and material evidence necessitates a different finding with respect to the claimant's residual functional capacity." (PageID.45.) The Court finds no error with regard to the *Drummond* rule. The additional evidence in this matter is more than sufficient to justify any deviation from the previous RFC. The ALJ noted, for example, an April 24, 2012, treatment note where Plaintiff's back pain was described as "intermittent" and "mild." (PageID.315.) A July 19, 2012, MRI found "mild" L4-5 spondylosis and facet arthropathy and "early" degenerative disc and facet changes at L5-S1. (PageID.355.) On August 10, 2013, Plaintiff was described as having "very mild lumbar spine degenerative changes." (PageID.493.) The ALJ also noted that Plaintiff had worked since the prior decision as a resident care aide. (PageID.50.) The VE testified that the exertional level of this work was very heavy as Plaintiff performed it. (PageID.90.) Accordingly, the ALJ did not err in adopting a less restrictive RFC than that found in the prior decision.[3]

### 4. The ALJ's RFC Determination is Supported by Substantial Evidence.

Plaintiff next argues that the ALJ's RFC determination is unsupported by substantial evidence due to the ALJ's failure to include limitations regarding her ability to balance, and need to wear a knee brace and use a cane when ambulating. (PageID.605–606.) RFC is the most, not the

---

[3] Plaintiff concludes this claim of error by making several additional assertions, arguing that: the ALJ did not factor her severe impairments into the RFC, the ALJ did not evaluate Plaintiff's chronic pain, and the ALJ never evaluated Plaintiff's severe impairment of fibromyalgia. (PageID.605.) "A claimant's severe impairment may or may not affect his or her functional capacity to do work." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). This is because "[t]he regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms." *Id.* (citing 20 C.F.R. § 404.1545(e)); *see, e.g.*, *West v. Colvin*, No. 5:14–69–KKC, 2014 WL 7177925 at *4 (E.D. Ky. Dec. 6, 2014) ("[t]he ALJ is not required to incorporate all 'severe impairments' in her RFC assessment"). In formulating the RFC, "'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, at 547–48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153, No. 00–1995, slip op. at 5 (3d Cir. Dec. 19, 2000) (table)). Accordingly, Plaintiff's claim that the ALJ's step two determination mandated a certain RFC or disability determination is rejected. The two remaining claims are clearly erroneous, as demonstrated by the discussion laid out above, and merit no further discussion.

least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545, 416.945; *see Griffeth*, 217 F. App'x at 429. The administrative finding of a claimant's RFC is made between steps three and four of the sequential analysis and applied at steps four and five. *See* 20 C.F.R. §§ 404.1520, 416.945 ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). It stands to reason that by failing to mention Plaintiff's ability to balance, the ALJ determined that Plaintiff was not limited in this area. Contrary to Plaintiff's assertion, the fact that the ALJ did not expressly state as much does not run afoul of the regulations' requirements for an RFC determination. Moreover, Plaintiff points to no records documenting any inconsistency between the record and the ALJ's RFC determination. Accordingly, this argument is rejected.

Regarding Plaintiff's ability to ambulate, the ALJ provided an extensive discussion of the evidence pertaining to Plaintiff's back and knee conditions. (PageID.605.) The ALJ acknowledged Plaintiff's testimony that she used a cane and leg brace (PageID.46) but went on to note that:

> the claimant [] underwent a physical therapy evaluation for her low back pain in April 2012 and was assessed to have good rehabilitation potential but there is no indication that she subsequently attended physical therapy sessions (Exhibits B5f and B6f). A x-ray study of her lumbar spine performed earlier that month had revealed degenerative disc disease / spondylosis at the L4-5 and L5-S1 vertebral levels and remote anterior wedging at the L1 level, but all findings were considered "mild" (Exhibit B6f/p.35). I note that when examined later that month by treating physician M. Ball, M.D., the claimant described her back pain as "intermittent and mild" (Exhibit B6f/p.12). There is no evidence to show that she sustained any injury or trauma to her low back as of June 27, 2012 to justify a significant worsening of symptoms.
>
> A magnetic resonance imagining (MRI) scan of the claimant's lumbar spine performed in July 2012 confirmed

> spondylosis/degenerative changes at the L4-5 and L5-S1 vertebral levels; however, again, these were clearly assessed as "mild and early" (Exhibit B8f/p.8).  In addition, the results of an electromyography (EMG) and nerve conduction study of her more symptomatic right lower extremity performed the following month were normal, showing no evidence of lumbosacral radiculopathy, plexopathy, or mononeuropathy (Exhibit 8f/p.7). X-ray studies of her lumbar spine performed in August 2013 showed normal disc height, alignment, and bone mineralization as well as preserve disc spacing. The degenerative changes identified were assessed as "very mild." A x-ray study of her right knee also performed at this time revealed degenerative changes but these were also interpreted as "mild" (Exhibit B16f/pp.7, 8).  When examined at the request and expense of the Administration in March 2013 by D. Sheill, M.D., she was noted to have no difficulty getting on and off the exam table or performing any maneuvers.  Her spine was straight without deformity, straight-leg-raising testing was negative, motor strength and sensation were intact in the lower extremities, range of motion testing of her lumbar spine and knees was normal, and she demonstrated a normal gait (Exhibit B13f).
>
> There is no annotation in the treatment notes and reports of the claimant's medical sources to document any significantly decreased range of motion of her lumbar spine or diminished pulsation of her lower extremities.  There is also no objective evidence of significant muscle weakness or atrophy, nor evidence of any spinal-related motor, reflex, sensory, or neurological deficits.  Examinations of her right knee have also not been notable for erythema, crepitance, or a decreased range of motion.  She has never undergone surgery to her back or right knee, nor has such ever been considered necessary by any treating or examining medical source.

(PageID.47–48.)  The ALJ concluded that while Plaintiff's impairments did compromise her capabilities, "the overall record does not establish that these impairments impose limitations greater than those reflected within the residual functional capacity determination of this decision." (PageID.49.)  Plaintiff claims that this statement was made in error, as "[i]t is undisputed that the Plaintiff medically needs [a knee brace and cane] to ambulate."  (PageID.605.)  But this bare assertion does nothing, on its own, to demonstrate that the ALJ's determination is unsupported by substantial evidence.  Plaintiff references no records or opinions demonstrating that it was undisputed a knee brace and cane were necessary for her to ambulate.

13

Indeed, the record does not support Plaintiff's argument. At the hearing, Plaintiff testified that Ms. Traci Jones, a nurse practitioner, prescribed Plaintiff with a cane. (PageID.81.) But Plaintiff does not point to, nor is the Court able to locate, that prescription in the record. Previously, Plaintiff had indicated she did not use a cane or knee brace. (PageID.239.) She was observed to "ambulate independently and did not display a gait disturbance." (PageID.400.) On another occasion, Plaintiff had no difficulty with a tandem gait. (PageID.405.) On September 22, 2013, about the time when Plaintiff says she was prescribed a cane, Ms. Jones found Plaintiff was able to ambulate independently without assistance. (PageID.437.) Ms. Jones made the same notation several months later on January 8, 2014. (PageID.420.) Finally, Plaintiff admitted at the hearing that she did not always use a cane. (PageID.81.) In sum, Plaintiff's assertion that is it undisputed she requires a cane to ambulate is without support in the record, and substantial evidence instead supports the ALJ's RFC determination. Plaintiff's argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated: November 29, 2016             /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE